IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JULIA BELL, *et al.*,

Plaintiffs,

v. Civil Action No. 2:25-cv-307

COLONEL SONNY B. AVICHAL,
*et al.*,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Julia Bell, Windy Crutchfield, Kim Mayo, and Walt Stone ("Plaintiffs") are residents of the City of Virginia Beach ("Virginia Beach"). Dkt. No. 6-1, at 1. Until recently, they regularly used and enjoyed the Pleasure House Point Natural Area (the "Pleasure House Point Area") for aesthetic and recreational purposes. *Id.* ¶ 15. Last year, Virginia Beach began a wetlands restoration project aimed at restoring a portion of the Pleasure House Point Area to its original tidal wetlands state (the "Project"). *Id.* ¶¶ 11–15. Because a small section of the Project was set to impact federal waters and wetlands, Virginia Beach sought and obtained a permit from the Army Corps of Engineers (the "Corps"). Dkt. No. 18, at 7–8. The restoration project then began. *Id.* at 9. Plaintiffs allege that the so-called "restoration project" has destroyed publicly available sections of the Pleasure House Point Area, as well as trails, trees, and wildlife habitat. *Id.*

Seeking to halt the Project, Plaintiffs brought this action against the Corps under the Administrative Procedure Act. Plaintiffs allege that they were injured by the destruction caused by the Project and challenge both the Corps' decision to approve the permit and its failure to ensure subsequent compliance. Dkt. Nos. 1, 6-1. Pending before the Court are the Corps' Motion to Dismiss, Dkt. No. 17, and Plaintiffs' Motion to Amend, Dkt. No. 36. For the reasons set forth below, the Court DENIES Plaintiffs' Motion to Amend and GRANTS the Corps' Motion to Dismiss.

## I. BACKGROUND

In 2025, Virginia Beach undertook the Project to convert a small section of the Pleasure House Point Area back to its original tidal wetlands state. Dkt. No. 18 at 6–7. The Project was designed to generate valuable tidal wetlands credits that Virginia Beach could use to offset the impacts of other city projects. *Id.* But, because a small section of the Project (comprising less than 10% of the project area, *id.* at 25) was set to impact water and wetlands under federal jurisdiction, Virginia Beach needed to clear those impacts with the Corps. *Id.* at 7–8. To do so, Virginia Beach sought a "verification" from the Corps that any impact the Project would have on federal waters and wetlands was authorized under Nationwide Permits 18 and 27. *Id.* at 7.

The Corps periodically issues Nationwide Permits, which are "designed to regulate with little, if any, delay or paperwork certain activities in federally jurisdictional waters and wetlands, where those activities would have no more than minimal adverse environmental impacts." 86 Fed. Reg. 73522, 73523 (Dec. 27, 2021) (citing 33 C.F.R. § 330.1(b)). If the Corp verifies that a given project is covered by one or more Nationwide Permits, it is cleared to move forward without a more cumbersome regulatory process.

On March 13, 2025, the Corps verified that Nationwide Permits 18 and 27 applied to the Project, and work on the Project began days later. Dkt. No 18,. at 8–9. Plaintiffs responded by filing suit on May 29, 2025. Dkt. No. 1. Work on the Project continued, and, on February 2, 2026, Virginia Beach notified the Corps that the construction phase of the project was complete. Dkt. No. 26-1, at 1–2.

The Corps filed a Motion to Dismiss, Dkt. No. 17, arguing that Plaintiffs lack standing and that the operative complaint fails to state a claim upon which relief can be granted. The Court scheduled a hearing on that motion. Dkt. No. 25. Before the hearing, the Corps filed two notices, Dkt. Nos. 26, 28, notifying the Court that the construction phase of the Project was complete and arguing

that Plaintiffs' claims were moot. At the hearing, the Court granted the parties leave to file supplemental briefing on the question of mootness. Dkt. No. 32. The parties complied. Dkt. Nos. 34, 35. In an effort to add claims against Virginia Beach, Plaintiffs moved to file an amended complaint. Dkt. No. 36. The Army Corps of Engineers' Motion to Dismiss and Plaintiffs' Motion to Amend are now ripe for review.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

#### 1. Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint to determine whether a plaintiff has properly stated a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" with all allegations taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.* at 555. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," and "where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation modified).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Id.*; *see also Twombly*, 550 U.S. at 555 (stating that a complaint "requires more than labels and conclusions, or a formulaic recitation of the elements of a cause of action") (citation modified). A court "need not accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or

arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (citation modified).

2. Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure tests the court's subject-matter jurisdiction. The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the plaintiff as the party invoking the court's jurisdiction. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). When a defendant challenges the Court's subject-matter jurisdiction on the face of the complaint, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams*, 697 F.2d at 1219). "In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* The Court, however, is not confined to the arguments made by the defendant in a motion to dismiss, and the Court must determine on its own whether it has jurisdiction over a matter. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

3. Article III Jurisdiction: Standing and Mootness

Article III of the Constitution limits the scope of federal court jurisdiction to cases and controversies. U.S. Const. art. III, § 2. Whether a plaintiff has standing to bring a claim is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). For standing to exist, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted).

Related to standing is the doctrine of mootness. The key difference between the two doctrines is one of timing: standing is determined "at the commencement of a lawsuit," *Deal v. Mercer Cnty.*

*Bd. Of Educ.*, 911 F.3d 183, 191 (4th Cir. 2018), but mootness applies "at every stage of the litigation," *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 389 (4th Cir. 2017). A case becomes moot when it "los[es] its character as a present, live controversy of the kind that must exist if we were to avoid advisory opinions on abstract propositions of law." *Hall v. Beals*, 396 U.S. 45, 48 (1969). "The central question of all mootness problems is whether changes in the circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001). If the harm sought to be enjoined has already occurred, the case is moot. *See Johnson v. Charlotte-Mecklenburg Schs. Bd. of Educ.*, 20 F.4th 835, 843 (4th Cir. 2021); *Bayou Liberty Ass'n, Inc. v. U.S. Army Corps of Eng'rs*, 217 F.3d 393, 396 (5th Cir. 2000).

**B. Motion to Amend**

A party that has already amended its complaint once can thereafter only amend its complaint with leave of court or consent of the opposing party. Fed. R. Civ. P. 15(a)(2). That said, courts "should freely give leave when justice so requires." *Id.* Leave of court should only be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509–10 (4th Cir. 1986) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). If a proposed amendment would not survive a motion to dismiss under Rule 12(b)(1) or 12(b)(6), it is futile. *See Save Our Sound OBX, Inc. v. N.C. DOT*, 914 F.3d 213, 228 (4th Cir. 2019) (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)). A proposed amendment is also futile "if the proposed amended complaint fails to satisfy the requirements of the federal rules." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citations omitted).

## III. ANALYSIS

### A. Motion to Dismiss

The Corps received formal verification from Virginia Beach on February 2, 2026, that the construction phase of the Project was complete. Dkt. No. 26-1. The Corps argues that because the construction phase is complete, Plaintiffs' claims are moot. Dkt. No. 34. Plaintiffs counter that their claims are not moot because the Court can still "remand and vacat[e] . . . the permit, enjoin the [Project] . . . and order the repair and recovery of the natural park area." Dkt. No. 35, at 1–2 . This argument is not persuasive. Because construction of the Project is complete, the Court finds that Plaintiffs' claims are moot.

In their complaint, Plaintiffs sought numerous forms of relief. Plaintiffs sought: 1) a stop order injunction; 2) an order vacating the Corp's verification of the Project; 3) an order directing the Corps to bring the Project into compliance with federal regulations; 4) an order directing the Corps to restore the affected portion of the Pleasure House Point Area to its previous condition; and 5) an order prohibiting any further excavation and cutting of a channel. Dkt. No. 6, at 9. To simplify: Plaintiffs sought first to halt the Project, and second to undo it. *See id.*

As to stopping the Project, the issue is simply that construction of the Project is complete. A stop order injunction would not afford Plaintiff's any relief, nor would an order vacating the Corps' verification of the Project. *See Weiss v. Sec'y of Dep't of Interior*, 459 F. App'x. 497, 500–01 (6th Cir. 2012) (ruling that an environmental challenge to a development project was moot because it was "largely finished"); *One Thousand Friends of Iowa v. Mineta*, 364 F.3d 890, 893 (8th Cir. 2004); *Bayou Liberty*, 217 F.3d at 396.

Plaintiffs rely on *Hillsdale Env't. Loss Prevention, Inc. v. U.S. Army Corps of Eng'rs*, 702 F.3d 1156 (10th Cir. 2012), and *Sierra Club v. U.S. Army Corps of Eng'rs*, 803 F.3d 31 (D.C. Cir.

2015), to support their position that their claims are not moot.[1] But these cases do not stand for what Plaintiffs suggest they do. In *Hillsdale* the United States Court of Appeals for the Tenth Circuit did not hold that the case "defied mootness," as Plaintiffs argue. 702 F.3d at 1167 (citation modified). Rather, the Tenth Circuit refused to reach the "close question[]" of whether the plaintiff's claim was prudentially moot due to the progress made in the underlying construction—because the court determined that plaintiff lost on the merits. *Id.* Similarly, the *Sierra Club* court held that the completion of a pipeline project had not mooted the plaintiffs' claims—but only because enjoining operation of the pipeline could afford plaintiffs relief. 803 F.3d at 43. No similar possibility for relief exists here. In short, the Court cannot afford Plaintiffs any relief by halting the completed Project.

The Court is also not in position to undo the Project. Plaintiffs suggest that this would be a simple matter: "mud can be moved and fully replanted with trees and wetland grasses . . . approximating the original condition of the natural park." Dkt. No. 35 ¶ 28. The problem, however, is that Plaintiffs brought this action under the Administrative Procedure Act, and the Defendant in this case is the Corps. The Administrative Procedure Act allows courts to "hold unlawful and set aside agency actions, findings, and conclusions found . . . to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Administrative Procedure Act also allows courts to compel agency action—but only in the narrow circumstances where the agency unlawfully withheld a discrete action that it was legally required to take. *See Vill. of Bald Head Isl. v. United States Army Corps of Eng'rs*, 714 F.3d 186, 193–95 (4th Cir. 2013); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62–63 (2004); 5 U.S.C. § 706(1). In such circumstances, a court can compel an agency to take that discrete action.

[1] Plaintiffs also cite *Columbia Riverkeeper v. U.S. Army Corps of Eng'rs*, 706 F. Supp. 3d 1127 (W.D. Wash. 2020). This case does not address the issue of mootness.

What the Administrative Procedure Act surely does not allow the Court to do is order the Corps to take over the Project—located on land the Corps does not own—and laboriously undo actions taken by Virginia Beach in order to restore the relevant area its prior state. *See Vill. of Bald Head Isl.*, 714 F.3d at 193–96 (holding that compelling action by the Corps in similar circumstances—albeit circumstances where the Corps owned the relevant project site—was beyond the scope of the Administrative Procedure Act). Because halting a completed project would afford Plaintiffs no relief, and because undoing the Project is beyond the scope of what judicial review under the Administrative Procedure Act allows, the Court can no longer provide Plaintiffs with the relief they seek. Plaintiffs' claims are therefore moot.

**B. Motion to Amend**

Plaintiffs have also filed a Motion to Amend. Dkt. No. 36. The Proposed Amended Complaint, Dkt. No. 36-1, is 62 pages long, and it is not always easy to parse. *See, e.g.*, Dkt. No. 36-1, at 60 (alleging that Virginia Beach violated state law by failing to comply with "independent duties under Virginia law and local ordinances"). As this Court understands it, the Proposed Amended Complaint raises three categories of claims: 1) the same federal law claims against the Corps that are disposed of above, *id.* at 55–57; 2) new but unclear state law claims against Virginia Beach for violating "independent duties under Virginia law and local ordinances," *id.* at 60; and 3) new § 1983 substantive due process claims against Virginia Beach, *id.* at 58–59.

The key question in determining whether to grant Plaintiffs' Motion to Amend is whether these claims are futile because they would not survive a motion to dismiss. The Court finds that Plaintiffs proposed claims are futile for the following reasons.

<u>1. Plaintiffs' federal law claims against the Corps are moot</u>

Plaintiffs' Proposed Amended Complaint repeats the claims against the Corps that are discussed above. *Id.* at 55–57. These claims are futile because they are moot. They could not survive

a Rule 12(b)(1) motion.

2. Plaintiffs' state law claims against Virginia Beach are barred by state sovereign immunity principles

State sovereign immunity principles apply to state law claims in federal court. *See, e.g.*, *AGI Assocs., LLC v. City of Hickory*, 773 F.3d 576, 578–79 (4th Cir. 2014) (applying North Carolina state sovereign immunity principles to a state law claim); *Baka v. City of Norfolk*, No. 2:21-cv-419, 2022 WL 757218, at *5–7 (E.D. Va. Mar. 11, 2022) (applying Virginia state sovereign immunity principles to a state law claim). Municipalities are protected by sovereign immunity when they are performing governmental, as opposed to proprietary, functions. *Massenburg v. City of Petersburg*, 836 S.E.2d 391, 395 (Va. 2019). Governmental functions "entail[] the exercise of an entity's political, discretionary, or legislative authority," while proprietary functions are "ministerial act[s] . . . involv[ing] no discretion." *City of Chesapeake v. Cunningham*, 604 S.E.2d 420, 426 (Va. 2004). To describe the same distinction differently, a municipality performs a governmental function "when [it] plans, designs, regulates or provides a service for the common good" and it performs a proprietary function when it engages in "routine maintenance or operation of a municipal service." *Id*. at 426–27.

Though the precise nature of Plaintiffs' state law claims is somewhat unclear, they are aimed at challenging the procedures used in planning and constructing the Project. *See* Dkt. No. 36-1, at 60. But planning and construction of the Project have the character of a governmental function. The choice by Virginia Beach to pursue the Project was unquestionably one involving discretion. And the Project's planning and construction look nothing like "routine maintenance or operation of a municipal service." *Cunningham*, 604 S.E.2d at 427. As a challenge to this sort of governmental function is barred by sovereign immunity, Plaintiffs' state law claims against Virginia Beach would not survive a Rule 12(b)(1) motion to dismiss. They are therefore futile.

3. Plaintiffs' § 1983 substantive due process claims against Virginia Beach fail to state a claim upon which relief can be granted

In order to make out a § 1983 substantive due process claim, a plaintiff must demonstrate "(1) that they had property or a property interest; (2) that the state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 827 (4th Cir. 1995) (citing *Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir. 1995)). Section 1983 substantive due process claims based on land disputes get particularly severe treatment. For example, in actions based on zoning, "it must be clear that the state's action has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relationship to the public health, the public morals, the public safety or the public welfare in its proper sense." *Sylvia*, 48 F.3d at 827 (citation modified); *see also CMDS Residential, LLC v. Mayor of Baltimore*, 714 F. Supp. 3d 583, 620 (D. Md. 2024) ("The Fourth Circuit has explained that the due process clause applies to local zoning disputes in only the most egregious circumstances."). In sum, "federal courts should be extremely reluctant to upset the delicate political balance at play in local land-use disputes." *Gardner v. Baltimore Mayor*, 969 F.2d 63, 68 (4th Cir. 1992).

Plaintiffs' § 1983 claims allege, generally, that Virginia Beach provided regulatory authorities with fraudulent or misleading information "in order to obtain approval and funding" for the Project, and that these actions by Virginia Beach deprived Plaintiffs of their interest in 1) the "use and enjoyment of public environmental resources," 2) "recreational and aesthetic interests," and 3) "procedural fairness in governmental decision-making." Dkt. No. 36-1, at 58–59.

Assuming that these interests are property interests, Plaintiffs still fail to adequately allege conduct by Virginia Beach which would qualify as having "no foundation in reason" such that this Court should intervene in a local land-use dispute. *Sylvia*, 48 F.3d at 827 (quoting *Vill. of Euclid*, 272 U.S. at 395). Plaintiffs make a number of conclusory statements alleging incidents of fraud or

misrepresentation. Dkt. No. 36-1, at 58–59. But even accepting those statements as true and construing them in the light most favorable to Plaintiffs, they are not a basis to conclude that Virginia Beach's choice to pursue the Project "has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relationship to the public health, the public morals, the public safety or the public welfare in its proper sense." *Sylvia*, 48 F.3d at 827 (quoting *Vill. of Euclid*, 272 U.S. at 395). Indeed, Plaintiffs openly acknowledge that Virginia Beach was substantially motivated by a desire to generate tidal wetlands credits that could be put towards other municipal projects. *See* Dkt. No. 36-1 at ¶¶ 84–90. As such, Plaintiffs' allegations, even when taken in the light most favorable to Plaintiffs, fail to state a claim for relief under § 1983 that is plausible on its face. *See Twombly*, 550 U.S. at 570.

Accordingly, Plaintiffs' § 1983 substantive due process claims against Virginia Beach would not survive a Rule 12(b)(6) motion to dismiss and are futile.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS the Corps' Motion to Dismiss, Dkt. No. 17, and DENIES Plaintiffs' Motion to Amend, Dkt. No. 36. This matter is DISMISSED.

The Clerk is DIRECTED to send a copy of this Memorandum Opinion and Order to all counsel of record and close this case.

It is SO ORDERED.

/s/
Elizabeth W. Hanes
United States District Judge

Norfolk, Virginia
Date: September 24, 2026